UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGIA A. POWELL,

    Plaintiff,                                           Civil Action No. 11-CV-15074

vs.                                                 HON. BERNARD A. FRIEDMAN

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

**<u>OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING PLAINTIFF'S MOTION FOR REMAND AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

        This matter is presently before the Court on plaintiff's motion for remand and defendant's motion for summary judgment [docket entries 11 and 12]. Magistrate Judge Mona K. Majzoub has submitted a Report and Recommendation ("R&R") in which she recommends that plaintiff's motion be denied and defendant's motion be granted. Plaintiff has filed objections to the R&R, and defendant has responded to plaintiff's objections. Pursuant to Fed. R. Civ. P. 72(b)(3), the Court reviews de novo any part of the R&R to which timely, specific objections have been made.

        This is a Social Security disability case. Plaintiff claims to be disabled due to multiple sclerosis ("MS"), depression and anxiety. The Administrative Law Judge ("ALJ") found that plaintiff's MS, cognitive disorder and depression are severe impairments which prevent her from performing her past work as a billing clerk or data entry clerk, but that she has the residual functional capacity ("RFC") to do unskilled, sedentary work that offers a sit/stand option and is "routine, low-stress, self-paced, non-production-oriented, repetitive work with occasional contact with coworkers, supervisors, and the general public, and with minimal changes in the work setting" and that has several other physical and environmental restrictions (Tr. 15). The ALJ concluded that

plaintiff is not disabled because, according to the vocational expert ("VE") testimony, in the State of Michigan there are "2,400 assembler position, 700 inspector position, 500 packager positions, and 1,300 machine operator positions" which a person with plaintiff's restrictions could perform (Tr. 21). The Appeals Council denied plaintiff's request for review. The magistrate judge recommends that the ALJ's decision be affirmed by granting summary judgment for defendant.

In reviewing a denial of Social Security disability insurance benefits or supplemental security income, the Court's role is limited under 42 U.S.C. § 405(g) to determining whether defendant's decision is supported by substantial evidence, defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In making this determination, the Court does not review the matter *de novo*, and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence also would have supported a contrary decision and even if the Court may have decided the case differently in the first instance.

In the present case, defendant's decision is not supported by substantial evidence for at least three reasons. First, the ALJ failed to make findings regarding the side-effects of plaintiff's medications and to include those findings in a hypothetical question to the VE.[1] The record

---

[1] The ALJ asked plaintiff if she is "experiencing any side effects," to which plaintiff stated, "[h]ere and there" and then described a temporary burning sensation she feels when "I have to give myself a shot" (Tr. 38). This is an apparent reference to one of plaintiff's MS medications, Copaxone. *See* Tr. 260 ("other than injection site reactions, is otherwise tolerating Copaxone"); Tr. 272 ("she is being treated with Copaxone daily subcutaneous injection [with] . . . occasional pain at the injection site." The ALJ did not ask plaintiff if she experiences side-effects from any of her many other medications.

2

indicates repeatedly that plaintiff takes, or during the relevant time frame has taken, a large number of medications for her depression, anxiety, MS, migraine headaches and other medical conditions. *See, e.g.,* Tr. 195, 213, 235, 271, 312 ("She is on a number of psychotropic medications"), 313, 314 ("She has been on multiple psychiatric medication[s] for several months, maybe years"), 315-16, 372-74, 382-83, 396-97, 410, 417, 430-37, 442-44. Sleepiness/drowsiness is a known side-effect of some of these medications, including Klonopin (Clonazepam), Xanax (Alprazolam) and Tramadol, while sleep disturbance is a know side-effect of at least two others, Cymbalta and Abilify (Aripiprazole). The record contains repeated references to plaintiff's sleepiness, drowsiness, fatigue and napping. *See, e.g.,* Tr. 41, 222, 260 ("remains extremely fatigued"), 267 ("significant fatigue"), 268 ("I have recommended that she attempt limiting her sedating medications i.e. Vicodin and Klonopin"), 270, 330-31, 363, 410 ("She reported sleeping 'a lot,' usually about 12 hours daily . . . and she feels constantly tired"), Tr. 412, 413, 417-18, 452, 456-458.

The ALJ did not mention plaintiff's medications or consider their side-effects in assessing plaintiff's RFC. Nor did she include any such assessment in her hypothetical question to the VE.[2] Because the side-effects plaintiff experiences appear to be vocationally limiting, the

---

[2] In her hypothetical question, the ALJ asked the VE to

> assume an individual of the claimant's age at the alleged onset date which was 37, a high school plus two years of college education, and past work experience who can perform work at the sedentary exertional level, but is limited to unskilled, routine, low-stress, self-paced, repetitive, non-production oriented work with minimal contact with coworkers, supervisors, and the general public; minimal changes in the work setting; cannot climb ladders, ropes, or scaffolds; can occasionally climb stairs, stoop, and crouch; should avoid concentrated exposure to fumes, odors, and noxious gases; should avoid temperature extremes and wet and humid conditions; should also avoid very loud noises and should also avoid hazards such as

3

omission of this factor from the hypothetical question eliminates the evidentiary value of the VE's testimony. "In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exists, 'the question[s] must accurately portray a claimant's physical and mental impairments.'" *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011), *quoting Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "This means that the question must 'reference all of a claimant's limitations,' though it need not contain a list of the claimant's medical conditions." *Turner v. Comm'r of Soc. Sec.*, 381 F.App'x 488, 494 (6th Cir. 2010), *quoting Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Under these circumstances, it was clear error for the ALJ to fail to consider the side-effects of plaintiff's medications in assessing her RFC and to incorporate these findings into her hypothetical question(s) to the VE. *See White v. Comm'r of Social Sec.*, 312 F.App'x 779, 789-90 (6th Cir. 2009) (remanding for further proceedings because, among other reasons, the ALJ's hypothetical question to the VE "did not account for the side effects of the pain medication"); *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (noting that "side effects of any medication taken to alleviate the symptoms" must be considered in assessing plaintiff's ability to work). Social Security regulations specifically require defendant to consider claimants' medication side-effects. *See* 20 C.F.R. § 404.1529(c)(3)(iv).

The second error lies in the fact that the ALJ failed to make a finding, and include it in a hypothetical question to the VE, regarding the extent to which plaintiff's dexterity and gripping strength have been impaired. In February 2008 Dr. Rossman noted "decreased dexterity

---

moving machinery and unprotected heights.

(Tr. 45-46.) In response, the VE indicated there are 2,400 assembler jobs, 700 inspector jobs, 500 hand packager jobs, and 1,300 machine operator jobs in the State of Michigan which such a person could perform (Tr. 46-47).

4

of the left hand when compared to the right" (Tr. 265, 454), and in May 2008 he estimated that plaintiff could use her hands only 20% of the time during an eight-hour work day to grasp, turn or twist objects or for fine manipulations (Tr. 459). In July 2009 Dr. Applebaum noted that plaintiff's "motor speed is severely decreased bilaterally. Strength of grip is mild to moderately impaired bilaterally" (Tr. 334, 421). In September 2010 Dr. Gandhi noted plaintiff's "slowing of finger movements bilaterally" (Tr. 365). In January 2011 Dr. Elias noted that plaintiff has "[l]oss of manual dexterity" (Tr. 425). And in February 2011 Dr. Bernal noted that plaintiff's "[m]anual dexterity was impaired bilaterally"(Tr. 412-13). Again, this is a vocationally significant aspect of plaintiff's medical condition, and it was error for the ALJ to omit it from her RFC assessment and from her hypothetical question to the VE. The error is all the more apparent in the present case because the jobs identified by the VE in response to the ALJ's hypothetical question, with the possible exception of the "inspector" jobs, all presumably require the worker to use her hands on a frequent basis. As noted above, defendant may rely on VE testimony to establish the existence of jobs which plaintiff can perform only if the testimony is given in response to a hypothetical question that accurately portrays plaintiff.

    The ALJ's third error is that she failed adequately to evaluate the opinions of plaintiff's treating physician, Dr. Stanton Elias, M.D., or to adequately explain her decision to accord them "little weight" (Tr. 20). Dr. Elias, one of plaintiff's neurologists, reported in January 2011 that plaintiff would, during a work day, need to take unscheduled 30-minute breaks two to four times per day, that she would be "off task" (i.e., would lack attention and concentration) 25% of the time or more, that she is "incapable of even 'low stress' work" due to "psychiatric disorder," and that she would likely be absent from work more than four days per month due to her

5

impairments or for treatment (Tr. 426-48). The following three sentences are the ALJ's entire explanation for according Dr. Elias' opinion "little weight":

> Claimant's multiple sclerosis was relatively stable, other than her brief exacerbation in 2009. Her cognitive disorder is not supported by the invalid testing or her academic and vocational backgrounds, and her depression was relatively well controlled on medications. Moreover, Dr. Elias' own exam indicated that she had very minimal neurologic deficit (Exhibit 14F at 3).

(Tr. 20.)

Theسixth Circuit has articulated specific rules regarding the evaluation of evidence from a treating physician:

> In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule. See Soc. Sec. Rul. 96–2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004). Because treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," their opinions are generally accorded more weight than those of non-treating physicians. 20 C.F.R. § 416.927(d)(2). Therefore, if the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Wilson*, 378 F.3d at 544. When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.* However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding. Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 ("In

>many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").
>
>There is an additional procedural requirement associated with the treating physician rule. Specifically, the ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. at *5. The purpose of this procedural aspect of the treating physician rule is two-fold. First, the explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id*. Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record. *Id*.

*Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 242-43 (6th Cir. 2007) (footnote omitted).

In the present case, the ALJ's explanation for rejecting Dr. Elias' opinion regarding plaintiff's restrictions does not begin to satisfy *Rogers*. She omits any mention of most of the required factors, and she clearly does not give "good reasons" for discounting his opinions.[3] In

---

[3] Indeed, these three sentences are largely illogical. The fact that plaintiff's "multiple sclerosis was relatively stable" is not inconsistent with Dr. Elias' opinion, as he does not indicate he bases his opinion on any exacerbation of this condition. The fact that a person's condition is "relatively stable" does not mean it is not disabling. The ALJ's statement that "[h]er cognitive disorder is not supported by the invalid testing or her academic and vocational background" is an apparent reference to another doctor's report (Dr. Bernal, Exhibit 19F), which does not support the ALJ's implication that plaintiff has no cognitive deficits. Indeed, the ALJ herself found that plaintiff's "cognitive disorder" is one of her "severe impairments" (Tr. 13). The ALJ's statement

short, the Court is unable to give this aspect of the ALJ's decision "meaningful review."[4] *Rogers, supra.*

For the reasons stated above, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. On remand, the ALJ must correct the errors identified above by (1) analyzing the evidence (and further developing the record, if necessary) relating to the side-effects of plaintiff's medications, weighing the nature and extent of the side-effects, and including these findings in her RFC assessment of plaintiff and in proper hypothetical questions to the VE; (2) analyzing the evidence (and further developing the record, if necessary) relating to limitations in the strength and dexterity of plaintiff's hands, weighing the nature and extent of these limitations, and including these findings in her RFC assessment of plaintiff and in proper hypothetical questions to the VE; and (3) analyzing the opinions of plaintiff's treating physicians, Drs. Elias and Rossman, in accordance with *Rogers.* Accordingly,

IT IS ORDERED that the magistrate judge's R&R is rejected.

---

that plaintiff's "depression was relatively well controlled on medications" does not undermine Dr. Elias' opinion because depression is not plaintiff's only impairment, and the medications plaintiff takes for depression may themselves have side-effects which limit her ability to work. Further, the ALJ's statement that "Dr. Elias' own exam indicated that she had very minimal neurologic deficit (Exhibit 14F at 3)" does not undermine Dr. Elias' opinion. At the cited page, Dr. Gandhi noted plaintiff's "poor attention span, . . . and slowing of finger movements bilaterally," new lesions in her brain, and "significant problems with depression" (Tr. 365).

[4] The ALJ also gave "limited weight" to the opinion of another of plaintiff's treating physicians, Dr. Rossman (Tr. 19). Although the ALJ's justification for doing so is somewhat better articulated as compared to her treatment of Dr. Elias' opinion, the requirements of *Rogers* are not satisfied and "meaningful review" of this portion of the ALJ's decision is not possible.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for a "sentence four" remand is granted, and this matter is remanded for further proceedings to correct the errors discussed in this opinion.

March 22, 2013            _s/ Bernard A. Friedman_____
                                        BERNARD A. FRIEDMAN
                                        SENIOR UNITED STATES DISTRICT JUDGE